FAIGLE TOOL AND DIE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 161.   Promulgated June 27, 1946.

*Raymond A. Fox, Esq.*, and *Harvey H. Berger, C. P. A.*, for the petitioner.

*Thomas F. Callahan, Esq.*, for the respondent.

OPINION.

HARRON, *Judge*: The issue in this case is whether petitioner is entitled, for excess profits tax purposes, to an excess profits credit based on income. Normally, a domestic corporation has the choice, under section 712 of the Internal Revenue Code, of computing its excess profits credit under either the income method or the invested capital method, whichever results in the lesser tax. But the availability of this choice presupposes that the corporation was in existence during the base period, usually the years 1936 to 1939, inclusive, and that it earned income from which the average base period net income, necessary for the computation of the income credit, can be determined. Hence, if the corporation did not come into existence until after December 31, 1939, it must, with exceptions to be hereinafter noted, compute its excess profits credit under the invested capital method prescribed by section 714. Petitioner was incorporated in February 1940. Accordingly, respondent asserts that petitioner is restricted to the invested capital method of computing its excess profits credit.

However, Supplement A to the excess profits tax provisions of the Internal Revenue Code recognizes that even though a corporation may not actually have been in existence during any of the years 1936–1939, it may have acquired, in a tax-free reorganization, the properties of a corporation or another type of business organization which was in existence during those years. If so, the acquiring corporation may compute its excess profits credit under the income method, using as its average base period net income the history of earnings of the business organization it acquired. For present purposes, section 740 defines such an "acquiring corporation" entitled to base its excess profits credit on income as one which has acquired "substantially all the properties" of a "sole proprietorship" in an exchange to which section 112 (b) (5) or 12 (c) was applicable.[1] It is not disputed

---

[1] SEC. 740. DEFINITIONS [as added by sec. 201, Second Revenue Act of 1940; amended by sec. 8, Excess Profits Tax Amendments of 1941; and further amended by sec. 228, Revenue Act of 1942].

For the purposes of this Supplement—

(a) ACQUIRING CORPORATION.—The term "acquiring corporation" means—

(1) A corporation which has acquired—

* * * * * * *

(D) substantially all the properties of a partnership in an exchange to which section 112 (b) (5), or so much of section 112 (c) or (e) as refers to section 112 (b) (5), or to which a corresponding provision of a prior revenue law, is or was applicable.

* * * * * * *

(b) COMPONENT CORPORATION.—The term "component corporation" means—

* * * * * * *

(5) In the case of a transaction specified in subsection (a) (1) (D), the partnership whose properties were acquired.

* * * * * * *

(d) In the case of a taxpayer which is an acquiring corporation the base period shall be the four calendar years 1936 to 1939, both inclusive, except that, if the taxpayer be-

that the Faigle Tool & Die Co. was a sole proprietorship. Nor is it disputed that Faigle, the sole proprietor, received in exchange for the properties of the proprietorship which were transferred to petitioner stock and a demand note of petitioner within the purview of section 112 (b) (5) and 112 (c).[2] After the exchange, Faigle owned all of petitioner's authorized stock and was in complete control of petitioner. The only reason which respondent asserts for denying petitioner the use of the excess profits credit based on income and for restricting petitioner to the excess profits credit based on invested capital, is that petitioner has not shown that it acquired "substantially all the properties" of the Faigle Tool & Die Co. The only question presented for our decision, therefore, is whether petitioner has satisfactorily made this showing.

The facts in this case are somewhat unusual. The proprietorship was formed in March 1938, and for the ensuing year and a half it was actively engaged in the manufacture of machine tools, dies, and jigs. Yet, the proprietorship actually owned during that time neither the machinery and equipment which it used in the manufacture of its products, nor the building in which its plant was set up. It leased both. When its month-to-month lease on the building was terminated, it bought land and constructed its own building and plant. After petitioner was formed, the proprietorship transferred to petitioner this land, plant, and building. It also transferred to petitioner the lease on the machinery and equipment which it then was renting on a month-to-month basis from the old corporation, as well as other machinery which it had purchased with proprietorship funds. Thus, petitioner has acquired all the machinery and equipment which was ever used by the proprietorship, has the same leasehold interest therein as had the proprietorship, and, in addition, has acquired the land, building, and machinery owned outright by the proprietorship. Some $18,000

came an acquiring corporation prior to September 1, 1940, the base period shall be the same as that applicable to its first taxable year ending in 1941.

*   *   *   *   *   *   *

(f) EXISTENCE OF ACQUIRING CORPORATION.—For the purposes of section 712 (a), if any component corporation of the taxpayer was in existence before January 1, 1940, the taxpayer shall be considered to have been in existence before such date.

*   *   *   *   *   *   *

(h) SOLE PROPRIETORSHIP.—For the purposes of sections 740 (a) (1) (D), 740 (b) (5), and 742 (g), a business owned by a sole proprietorship shall be considered a partnership.

SEC. 742. SUPPLEMENT A AVERAGE BASE PERIOD NET INCOME [as added by sec. 201, Second Revenue Act of 1940; amended by secs. 8 (d) and 15, Excess Profits Tax Amendments of 1941; and further amended by sec. 228, Revenue Act of 1942].

In the case of a taxpayer which is an acquiring corporation, its average base period net income (for the purpose of the credit computed under section 713) shall be the amount computed under section 713 or the amount of its Supplement A average base period net income, whichever is the greater. * * *

[2] Respondent likewise does not challenge the fact that, pursuant to section 228 (f) of the Revenue Act of 1942 and section 30.742–2 of Regulations 109, petitioner is entitled to have the amendments to Supplement A made by the Revenue Act of 1942 apply retroactively to the 1941 taxable year here involved.

of proprietorship cash was also transferred to petitioner. as well as an additional $5,000 which probably had its source in proprietorship funds. The accounts receivable, inventory, and prepaid insurance of the proprietorship were likewise acquired, and almost $14,000 of proprietorship liabilities were assumed by petitioner. The net worth of the proprietorship prior to the transfer to petitioner was $48,053.18, and petitioner acquired all of this, not in the form of net assets alone, but in the form of gross assets of the proprietorship, reduced by the liabilities of the proprietorship which petitioner assumed. See *Milton Smith*, 34 B. T. A. 702. Petitioner is engaged in exactly the same business of manufacturing machine tools, dies, and jigs as was the proprietorship. The business contacts and good will of the proprietorship have been acquired by petitioner. Ninety per cent of the old employees of the proprietorship have been reemployed by petitioner. Faigle, who was the sole proprietor, is now the president and general manager of petitioner, devoting his full time to the business. Had petitioner never been formed at the end of February 1940 there could be no doubt that the resumption of manufacturing would have been by the same proprietorship which was operating in 1938 and 1939. In essence, the incorporation of petitioner has not changed the former proprietorship business in any respect. It is one and the same business, with exactly the same assets.

Respondent contends that petitioner did not acquire substantially all of the assets of the proprietorship. It is part of petitioner's burden of proof to show that it did, and we think petitioner has met this burden of proof. Consideration has been given to respondent's contention. However, the entire record explains satisfactorily that certain liabilities must have offset what appeared to be, during the course of the trial, free assets to respondent, with the result that the assets of the proprietorship were actually less than respondent argues in his brief. Respondent has seized upon one item in the record without taking into consideration other related items of evidence. For example: During the trial reference was made orally to an accounting statement which, it was said, showed that as of September 30, 1939, the proprietorship had gross assets of over $138,000. This was immediately prior to the date on which the proprietorship was forced to vacate its leased plant site. The gross assets of about $138,000 consisted chiefly of three items, cash and accounts receivable of approximately $105,000 and notes receivable from the old corporation of about $26,500. The oral reference to such gross assets, at the trial, did not extend to any description of net assets after the existing liabilities of the proprietorship. We are satisfied from the entire record that there were liabilities and that the proprietorship had to pay out certain amounts, which, of course, would reduce the liquid assets. We think respondent's argument suffers from the defect of not reconstruct-

ing items of expense and liabilities from the record. It is clear that the proprietorship continued to pay $1,000 a month rent on leased machinery; that it continued to pay the regular salaries to key personnel which it retained; and that it had some accounts payable (some of which were later assumed by petitioner). Furthermore, income tax had to be paid by Faigle on the net earnings of the proprietorship, for which some reserve had to be set up, for it appears that Faigle's chief source of income was the earnings of the proprietorship, and he had to pay income tax out of distributions from the business.

Respondent contends that petitioner has not shown that Faigle did not liquidate and pay to himself, personally, the cash, the notes receivable, and the accounts receivable of the proprietorship. On the contrary, the record amply demonstrates that any of these amounts not shown to have been actually transferred to petitioner were used up in the operations of the proprietorship in the interval between the shut-down of active manufacturing and the organization of petitioner. The $105,000 of accounts receivable and cash appears to correspond to the $75,000 cash which Faigle withdrew from the proprietorship bank account prior to the garnishment obtained by his brother in the suit against the old corporation and the proprietorship, and to the $30,000 cash bond which the proprietorship deposited to release the garnishment. Approximately $67,000 of this $105,000 went to petitioner in the form of fixed assets and cash, and $13,500 was paid to Faigle's brother in settlement of his claim. Out of the remaining $25,000, rent on the leased machinery, salaries to the retained key personnel, and Faigle's 1939 income tax liability had to be paid. We are satisfied that Faigle, personally, did not keep any portion of the $25,000 in any amount of any consequence.

The third item of gross assets to which respondent's argument is directed consists of the $26,500 of notes receivable from the old corporation appearing on the books of the proprietorship as of September 30, 1939. Petitioner, as a matter of fact, did not acquire any notes receivable of the proprietorship. On account of this, respondent contends that a substantial asset was not transferred from the proprietorship to petitioner. There were included on the proprietorship books as of January 31, 1940, notes receivable from the old corporation, and they were listed as proprietorship assets. But it has now been explained by petitioner's accountant, who testified at the trial, that the notes receivable which appeared on the proprietorship books on January 31, 1940, represented an obligation of the old corporation to Faigle, personally. They were not connected with the proprietorship business. The accountant testified that, therefore, such notes receivable were not transferred to petitioner when petitioner was organized.

The amount of notes receivable listed on the books on January 31, 1940, was smaller than the $26,500 of notes listed on the books as of

September 30, 1939, about which respondent argues. The crucial date for the purposes of the issue presented is January 31, 1940, the date closest to the time petitioner was organized. As has been pointed out above, the controversial item of $26,500 of notes was not an asset of the proprietorship even on September 30, 1939, and consequently it should not have been transferred to petitioner. If any doubt remains, and it could be said that these notes receivable were assets of the proprietorship, there is ample indication in the record that the proceeds were used to discharge proprietorship liabilities, or were transferred to petitioner in the form of cash or other property.

We hold, therefore, that within both the spirit and the letter of section 740 of the Internal Revenue Code, petitioner acquired substantially all of the properties of the Faigle Tool & Die Co., a sole proprietorship, in an exchange to which section 112 (b) (5) or 112 (c) was applicable, and that petitioner, therefore, is entitled to compute its excess profits credit under the income method.

*Decision will be entered under Rule 50.*