RANSOHOFFS INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8930. Promulgated September 19, 1947.

*Lawrence Livingston, Esq.,* and *H. W. S. Leeker, Esq.,* for the petitioner.

*R. E. Maiden, Jr., Esq.,* for the respondent.

OPINION.

Van Fossan, *Judge*: It is unnecessary to enter into any extended discussion of sections 740 and 744 of the Internal Revenue Code, under which the controversy in the case at bar arises. The precise issue is whether the petitioner is entitled thereunder to compute its excess profits credit by the income method, as provided in section 713, or by the invested capital method, as provided in section 714. The petitioner contends that it is entitled to use the income method. In order to do so the preceding partnership must be regarded as a "qualified component corporation" as defined in section 740 [1] and it must have been in existence on the date of the beginning of the petitioner's base period, August 1, 1936.

---

[1] SEC. 740. DEFINITIONS.

For the purposes of this Supplement—

(a) ACQUIRING CORPORATION.—The term "acquiring corporation" means—

(1) A corporation which has acquired—

\* \* \* \* \* \* \*

(D) Substantially all the properties of a partnership in an exchange to which section 112 (b) (5), or so much of section 112 (c) or (e) as refers to section 112 (b) (5), or to which a corresponding provision of a prior revenue law, is or was applicable.

\* \* \* \* \* \* \*

(b) COMPONENT CORPORATION.—The term "component corporation" means—

\* \* \* \* \* \* \*

(5) In the case of a transaction specified in subsection (a) (1) (D), the partnership whose properties were acquired.

\* \* \* \* \* \* \*

(c) Qualified Component Corporation.—The term "qualified component corporation" means a component corporation which was in existence on the date of the beginning of the taxpayer's base period.

\* \* \* \* \* \* \*

The petitioner and the respondent agree that the partnership composed of Robert and James was a component corporation as defined by the statute. The respondent argues that the partnership was not a "qualified component corporation" because it was not in existence on August 1, 1936, due to the fact that the death of Howard in October 1938 terminated the prior partnership of Robert, James, and Howard, and that the partnership of Robert and James became a new entity.

Therefore, the issue before us is narrowed to one of law—Did the death of Howard dissolve the partnership composed of himself, Robert, and James and thus interrupt the continuity of the component corporation extending from the petitioner's taxable year to the beginning of its base period, as required by the statute?

In his brief respondent expresses his position in the following language:

> The whole issue on appeal now hinges on the one point of whether the partnership, composed of Robert and James, was *actually* in existence on August 1, 1936. This presents on the facts of the case a cold question of law—the law of partnerships, governed by the law of the State of California.

He then cites section 2425 of the California Civil Code,[2] covering the dissolution of a partnership, and asserts that there is no provision of the California law which permits, by agreement or otherwise, the avoidance of a dissolution of a partnership upon the death of a partner. He seeks to distinguish the continuance of the business of a partnership from the continuance of the partnership itself. He construes the partnership agreement of May 20, 1938, as providing for the continuation of the business, but not of the partnership.

The petitioner contends that, under the California decisions and under a proper interpretation of the Federal taxing statutes, a partnership may, by agreement, be continued after the death of one of the partners, that the continuity of the petitioner as the acquiring corporation and of its predecessors, the "component corporation," was thus preserved during the petitioner's base period, and that hence it has complied strictly with the requirements of the statute.

The first question is whether or not after the death of Howard the partnership contract of May 20, 1938, continued the partnership, or merely the business being conducted by it. From a study of the history and background of Ransohoffs and of the stated intent and purpose to continue their family partnership as expressed in the contract, we conclude that after Howard's death the partnership was intended to, and did, continue in existence. The agreement provided that "the

---

[2] Section 2425 : Causes of dissolution : Dissolution is caused :

    \*        \*        \*        \*        \*        \*

(4) By the death of any partner.

partnership shall continue in existence until the death of two of the parties hereto   *   *   *" and "In the event of the death of any partner, the two survivors shall continue as partners under the same firm name and subject to the terms, covenants, and conditions of this agreement as then existing, or as hereafter amended or modified, and the interest of the deceased partner shall be compensated for in the manner hereinafter provided." From this language it is plain that the fundamental intent was to carry on the family partnership, not merely to carry on the business enterprise. The collateral record lends ample support to this view.

Addressing himself to the question of whether the partnership was actually continued after Howard's death and thus in existence on August 1, 1936, the respondent argues that, even though the agreement contemplated and provided for such continuance, it was ineffectual in the face of the California statute. In *Robert E. Ford*, 6 T. C. 499, we had a comparable question arising in Minnesota and relating to a proposed adjustment of the cost basis of the partnership for the capital asset it sold. The same basic principle of law was involved as is now before us. There we said:

> *   *   * The respondent suggests that the withdrawal of the partner whose interest was purchased on November 26, 1938, constituted a dissolution or termination of the partnership and the commencement of a new partnership. By the general rule of law, death or withdrawal of a partner dissolves the partnership, but it is competent for the parties to provide otherwise. As stated by Rowley in his work on Modern Law of Partnership (sec. 550):
>
> > "*   *   * Whatever in the absence of express agreement of all partners may be the technical effect of the admission of a new member or retirement of an old member these conditions are ordinarily cared for by agreement, either under provisions in partnership articles authorizing a retirement, or arrangements made by the partners at the time of retirement. *   *   *"
>
> Cf. *Burwell* v. *Mandeville's Executors*, 2 How. 560, 576.
>
> In the instant proceeding, the offer to purchase the partnership interest specifically provided for the continuation of the partnership without interruption. The partners having legally contracted for the continuation of the partnership and having actually continued it, those facts should be recognized and effect thereto given, unless prohibited by some provision of the taxing act. We are not aware of any such prohibition. Moreover, under section 27 of the Uniform Partnership Act, which has been adopted by the State of Minnesota, it is specifically provided that a transfer of a partnership interest does not of itself dissolve the partnership.

See also *Allan S. Lehman*, 7 T. C. 1088, in which we said:

> *   *   * the old partnership of Lehman Brothers continued to be carried on by the surviving partners, notwithstanding the death of Arthur Lehman, and that no new partnership came into existence as would start a new period of holding of the partnership interests of the surviving partners who continued to carry on the partnership business. *   *   *

The general provision of the California statute to the effect that the death of a partner causes dissolution of the partnership relied on by respondent does not render ineffective a specific agreement to continue the partnership thereafter. See section 2496 of the California Civil Code, which provides specifically:

The * * *, death * * * of a general partner dissolves the partnership, unless the business is continued by the remaining general partners.
(a) Under a right so to do stated in the certificate, or
(b) With the consent of all members.

In *Allan S. Lehman, supra*, which arose in the State of New York, the statute of which governing the dissolution of partnerships is the same as that of California, we so held. The petitioner has cited several California cases which directly and indirectly conform to our conclusions.[3]

We have found no prohibition in the Federal taxing statutes against the continuance of a partnership for tax purposes after the death of a partner. Moreover, the basic purposes of section 740 must not be overlooked. It is a remedial measure and, as such, it is axiomatic that it be construed liberally. It was intended to give to the petitioner the benefit of the business experience of its predecessors.

In *Faigle Tool & Die Corporation*, 7 T. C. 236, we said:

However, Supplement A to the excess profits tax provisions of the Internal Revenue Code recognizes that even though a corporation may not actually have been in existence during any of the years 1936–1939, it may have acquired, in a tax-free reorganization, the properties of a corporation or another type of business organization which was in existence during those years. If so, the acquiring corporation may compute its excess profits credit under the income method, using as its average base period net income the history of earnings of the business organization it acquired. * * *

There is no doubt that the petitioner corporation acquired and succeeded to the business organization of the Ransohoff partnership. We have held that the preceding partnership had a continuous existence. The history of the earnings of that partnership, whether composed of Robert, James, and Howard, or of Robert and James, is a proper measure of the average base period net income of the petitioner for excess profits tax purposes. Therefore, the petitioner is entitled to compute its excess profits tax credit upon the income method, as provided in section 713.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

KERN, *J.*, concurs only in the result.

---

[3] *Thompson* v. *Gibb*, 1 Cal. U. 173; *California Employment Commission* v. *Walters*, 64 Cal. A. (2d) 554.