E. T. RENFRO DRUG CO. v. COMMIS-
SIONER OF INTERNAL REVENUE.

No. 12966.

United States Court of Appeals
Fifth Circuit.

July 27, 1950.

Rehearing Denied Sept. 13, 1950.

R. B. Cannon, Ft. Worth, Tex., for petitioner.

Harry Marselli, Sp. Asst. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Charles Oliphant, Chief Counsel Bur. of Int. Rev., and Claude R. Marshall, Sp. Atty., Bur. of Int. Rev., Lee A. Jackson, Sp. Asst. to Atty. Gen., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and McCORD and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

The question presented by the petition for review in this case, is whether the Tax Court erred in sustaining a determination of the Commissioner of the excess profit credit,[1] based upon income, to which the petitioner for review was entitled for the calendar years 1940, 1941, 1942 and 1943, by refusing to add to, or include in petitioner's base period (1936 to 1939, inclusive) net income the average base period net income of four certain partnerships, of which petitioner claims to have been an "acquiring corporation," and the said partnerships claimed to have been "component corporations."[2] Determination of this question in turn depends upon the legal effect of the unqualified purchase by two members of the partnerships of an "undivided ⅓ interest in and to four retail drug partnership" businesses, and the transfer of these properties to petitioner, which the purchasers controlled. Confronted with regulation 112, § 35.740-4, providing that "a partnership (or a business owned by a sole proprietorship) cannot be an acquiring corporation and, therefore, section 740(g) cannot operate to make any of its predecessors component corporations of its acquiring corporation," the Tax Court determined that by the purchase by two members of a partnership of the interest of the third, "one of two events occurred. Either there was then created a new partnership

1. §§ 710(b) (2) and 710(b) (3), Internal Revenue Code, 26 U.S.C.A. § 710(b) (2, 3).

2. §§ 740 & 742, Internal Revenue Code, 26 U.S.C.A. §§ 740, 742; Regulation 112, §§ 35.740–1; 35.740–2.

of Renfro and Allen [the purchasing partners] which acquired the assets of the * * * old partnerships; or the assets of the old partnerships were acquired by * * * [the purchasers] in joint proprietorship. In either event the property of the * * * partnerships passed through the hands of a partnership or of individuals who could not, under the statute and regulations, transfer to the corporation the business experience of the * * * partnerships during the base period because the intervening proprietors were not 'acquiring corporations' as defined in the Internal Revenue Code."

The petitioner here contends that this ruling fails to give effect to the distinction between the dissolution and termination of a partnership following the withdrawal of a partner therefrom. Its entire argument is based upon the proposition that while from the purchase and withdrawal of the partner there followed a dissolution of the partnership as a firm, the remaining partners were nevertheless charged with winding up the affairs of the partnership, and while this was taking place, the partnership continued until its affairs were wound up and the net assets distributed to those entitled thereto, that is, to the two purchasing partners.

Petitioner's argument fails to convince us that the Tax Court was in error in evaluating the legal effect of the transaction. It confuses the rule of dissolution and subsequent "winding up" for the benefit of, and distribution of assets to, the members of the dissolved partnership, with the rights of the purchasers of a partnership interest to deal with such purchased interest as they may choose. Thus, dependent upon the facts of any case, the purchasers might continue a partnership, but unless we attribute to a partnership an independent juristic entity, which the law does not permit, it would not be the original partnership, but a new one. In the absence of such agreement for continuance as partners, the purchasers would hold as joint proprietors. The petitioner has failed to show us how its claim can legally avoid

the two horns of the dilemma with which it is confronted: the new partnership or joint proprietorship on the one side, or on the other, impalement upon the horn of inability to meet the test of the Internal Revenue Code § 112(b) (5), which excepts the transfer "only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

The decision of the Tax Court, upon the facts of this case as fully found by it and stated in its published opinion (11 T.C. 994), is correct, and is affirmed.

HUTCHESON, Chief Judge, dissenting.

An excess profits credit tax case, the petitioner is here complaining that instead of, as it did in the Ransohoffs case,[1] giving effect to the real facts as they in substance occurred, and construing Sec. 740 as a remedial measure and, therefore, liberally, the Tax Court became so preoccupied with the technical form of the transaction as to entirely miss the meaning of it as a whole.

It insists that what the Tax Court said in that case of the purpose of Sec. 740, "It was intended to give to the petitioner the benefit of the business experience of its predecessors. * * *", and "There is no doubt that the petitioner corporation acquired and succeeded to the business organization of the Ransohoff partnership", is equally true as to the petitioner corporation here and the Wren partnerships.

It insists, too, that it is equally true that the continuity of the petitioner as the acquiring corporation and of the partnerships as the component corporation, was preserved during the petitioner's base period, that it has substantially complied with the requirements of the statute and is entitled to its benefits.

I agree. Demonstrating anew that, "As long as the matter to be considered is debated in artificial terms there is a danger of being led by a technical definition to apply a certain name, and then to deduce consequences which have no relation to the

1. 9 T.C. 376.

grounds on which the name was applied",[2] the decision against the taxpayer has more of chop logic than of logic in it.

In Guy's case, the method and purpose of the arguer was to give a tag or label, relied on for fixing liability on defendants, a certain meaning and content and having so defined it, make the defendants liable by the simple process of affixing the tag or label to them.

Mr. Justice Holmes who wrote the opinion in that case for the court refused to be misled by this method. He began his discussion with, "The substance of the case is this:" He followed it by a statement of the undisputed facts and the application to them of correct principles of law.

In this case, by assuming that it has that meaning, the method is to ascribe to the phrase "acquiring corporation" in Treasury Regulation 112, Sec. 35.740-4, "A partnership (or business owned by a sole proprietor) cannot be an acquiring corporation" a meaning and content it does not have. Under this ascribed meaning, Inez Renfro and Inez Allen would necessarily be either a successor partnership or a successor joint proprietorship to the Wren partnerships, and, therefore, an acquiring, rather than a component, corporation. Having thus gotten them tagged as "acquiring" partnerships or "proprietors", the Tax Court, finding them impaled on one or the other horn of this manufactured dilemma, holds that under the meaning and content thus ascribed to the regulation, they cannot be component corporations, that is "partnerships whose properties were acquired".

In order to demonstrate the fallacy of these assumptions, I shall proceed, as Mr. Justice Holmes did, to set the case out in its substance.

The facts are not disputed. The only testimony offered was that of the taxpayer. From it these controlling facts[3] clearly appear.

Under the facts as thus set out in the margin, I think it wholly unreasonable to say that there was a successor partnership to the Wren partnerships or that the two ladies became an acquiring corporation. What occurred and all that occurred was that the taxpayer corporation and the partners in 1939 perfected an agreement by

---

2. Guy v. Donald, 203 U.S. 399, at page 406, 27 S.Ct. 63, 64, 51 L.Ed. 245.

3. These are:

Mr. E. T. Renfro was the organizer, manager and operator of the Renfro properties. At the time of his death in 1934 there were 20 retail stores in Fort Worth and 7 in little towns immediately around it. About one-half of the stores were owned by Mr. Renfro one hundred percent and the other half were partnerships in which he was a partner on oral agreements. In addition, there were two corporations in Fort Worth, which owned one store apiece, one corporation at Cleburne owning two stores, and one at Mineral Wells owning two stores.

During the period from 1936 to 1938, the Renfro organization consisted of a group of partnerships and about three or four corporations, and there was what was called a wholesale division, operated as a convenience for buying, or as a buying agency to serve all of the stores.

Mr. Allen, whose wife was one of the proprietors, testified: that, beginning about immediately after Mr. Renfro's death in 1934, there was dissatisfaction because each of the surviving partners wanted to be general manager; that he, Allen, devoted his efforts to trying to get the whole business incorporated, and that in 1939, it was agreed that taxpayer corporation would increase its capital stock from $28,000 to $433,000, and this would be used in acquiring the assets and business of the partnerships; that Mrs. Allen and Mrs. Renfro, the owners of the Renfro interest, agreed to, and did, in August, 1939, buy out Horne, a partner in several of the partnerships; that they tried to get Wren to stay in the business and take stock for his interest, but when he found that instead of putting him, they were going to put a Mr. Smith in, as general manager, he decided not to go into the corporation but to take his interest in cash; that it was then understood and agreed that, because of the better profits in December, he would continue in the business until Dec. 31; that this agreement was carried out as made and on Feb. 4th, Wren transferred his interest to the two ladies, the corporation, pursuant to the understanding, advancing the money, and ten days later they transferred all the properties to the corporation, taking stock therefor.

which the Wren partnership would continue through 1939, and would be then transferred to the corporation. There was no intervening partnership intended, no intervening partnership occurred. There was no dissolution of the partnership followed by a new one, there was no change whatever except those agreed upon by all the partners and the corporation. The Wren partnerships were on these undisputed facts, it seems to me, component corporations within the meaning both of the letter and the spirit of the section.

Instead of interpreting Sec. 740 liberally, as it was required to do and as it did in the Ransohoffs case, 9 T.C. 376,[4] a case which I think controlling, it approached it in the technical spirit of the school man arguing how many angels could "bobinate" on the point of a needle.

All that petitioner asks here is that it be given the benefit of the base period business experience of the predecessor partnerships, which continued without interruption until the corporation took them over in accordance with the preexisting agreement and plan.

It seems clear to me that a finding denying that result here was clearly erroneous, indeed wholly without evidence to support it. When the undisputed, the real, facts of this transfer to the corporation are considered, I think it must be regarded as mere quibbling to deprive the corporation of the benefits Sec. 740 was intended to give it.

These undisputed facts, as we have seen, are that the partnerships continued through the full year 1939, that, though the transfer of the interest was not executed until Feb. 4, 1940, the corporation was then, and had for some time been, in existence, and that when the transfer from Wren was executed, pursuant to the plan that the corporation was to take over, it was the corporation that paid Wren for his interest.

It is true that the transfer was not from Allen to the corporation, but from Wren to the two ladies, but it is also true that ten days after Wren had conveyed to them, they conveyed to the corporation, the corporation issued its stock to them, and later on they repaid the corporation the money it had advanced to Wren. The transaction was the same in substance, therefore, as if the corporation had transferred to Wren stock equivalent to the interest he transferred, and Wren had transferred the stock to the two ladies.

It is admitted that if the transaction had taken this form, a transfer by the three partners to the corporation, the issuance of the stock to the three, and the transfer of the stock by Wren to these ladies, it would have been held that the corporation thus acquired the benefit of the business experience of the predecessor partnerships.

To hold otherwise here, because the transaction took a little different form, seems to me to exalt form above substance, shadow above reality.

The dilemma which the Tax Court sets up is an assumed or false dilemma, that is, it is a dilemma which has never existed. There was no real finishing of one partnership and the creation or formation of another. There was a plan to transfer the properties of the Wren partnership to the corporation, and the fact that the form it took allowed a leeway of ten days between the time that the ladies got their assignment and in turn conveyed to the corporation is of no legal significance whatever.

Feeling strongly that our judgment, in right and justice, should be to reverse on the point decided and send the case back for decision on the second point, as to whether the base period net incomes have been properly adjusted to reflect reasonable deductions for salaries or compensation to the partners, I respectfully dissent from the judgment of affirmance.

4. In that case the court said: "Moreover, the basic purpose of Sec. 740 must not be overlooked. It is a remedial measure and, as such, it is axiomatic that it be construed liberally. It was intended to give the Petitioner the benefit of the business experience of its predecessors."