**HAWAIIAN FREIGHT FORWARDERS,
Ltd. v. COMMISSIONER OF IN-
TERNAL REVENUE.**

No. 12965.

United States Court of Appeals,
Ninth Circuit.

May 7, 1952.

As Amended on Denial of Rehearing
June 19, 1952.

Louis Janin, Harold E. Haven and Melvin H. Morgan, all of San Francisco, Cal., for petitioner.

Ellis N. Slack, Acting Asst. Atty. Gen., A. F. Prescott, Melva M. Graney, Irving Axelrad, Sp. Assts. to the Atty. Gen., for respondent.

Before: DENMAN, Chief Judge, and STEPHENS and BONE, Circuit Judges.

DENMAN, Chief Judge.

This is a petition to review a decision of the Tax Court affirming a decision of the Commissioner of Internal Revenue that the petitioner, a Hawaii corporation, had a deficiency in its tax return for its 1943 and 1944 fiscal years. The Tax Court held that the taxpayer must report its 1943 and 1944 excess profits income under the invested capital method of 26 U.S.C. § 714 rather than the income method of § 713 because the taxpayer had not qualified itself for the latter treatment under the relevant portions of 26 U.S.C. § 740 by showing that it or a qualified "component corporation" was in existence during the base period of 1936–40.

The petitioner was organized on March 14, 1940, to acquire the business of a partnership engaged in the freight forwarding business. This business in partnership form had first been organized in 1937 with two active partners, Leffel and Ballentyne, and one inactive partner, Schnack. Their interests were in shares of 33/67 and 24/67 and 10/67, respectively. On March 8, 1940, six days before the corporation was organized, Schnack withdrew from the partnership, taking $8,000 for his capital interest and accumulated profit. Each of the remaining partners had a 50% interest in

whatever was left. The certificate of dissolution required to be filed by Hawaiian law was filed on July 2, 1940, stating that the partnership was dissolved on March 14, the day that the corporation was organized. After March 8 when Schnack withdrew, Leffel and Ballentyne carried on the business until March 14 when they each became 50% shareholders in the successor corporation. The transfer of assets to the corporation was not completed until April 1 because much of the freight business was in transit between Honolulu and Chicago.

The Tax Court held that the predecessor partnership, existing from 1937 to March 8, 1940 with three partners, did not qualify as a "component corporation" within the meaning of 26 U.S.C. § 740 (b) (5)[1] and § 740(a) (1) (D).[2] The petitioner claims that this decision is error because the Tax Court overlooked the fact that this partnership was an entity under the Hawaiian law or the agreement of the parties; and thus, the entity, originally composed of three men, continued unabated after Schnack's withdrawal until the corporation was formed.

On this petition to review, the government takes the position that the predecessor partnership of the taxpayer existed only between March 8, 1940 and March 14, 1940 and that the three-man partnership existing before March 8, 1940 was a different partnership for the purposes of the revenue code. Consequently, the predecessor partnership was not in existence before January 1, 1940. This conclusion is based on the argument that when Schnack withdrew

1. "(b) Component corporation. The term 'component corporation' means—
   *     *     *     *     *     *
   "(5) In the case of a transaction specified in subsection (a) (1) (D), the partnership whose properties were acquired."

2. "For the purposes of this Supplement—
   "(a) Acquiring corporation. The term 'acquiring corporation' means—
   "(1) A corporation which has acquired—
   *     *     *     *     *     *
   "(D) substantially all the properties of a partnership in an exchange to which section 112(b) (5), or so much of section 112(c) or (e) as refers to section 112(b) (5), or to which a corresponding provi-

sion of a prior revenue law, is or was applicable."

§ 112(b) (5):
"Transfer to corporation controlled by transferor. No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. * * *"

from the three-man partnership, either a new partnership or a proprietorship was formed, with only two men as members. Thus, the taxpayer here is faced with a dilemma: if it argues that the three-man partnership continued unabated until the corporation was formed, the test of identity of interest prescribed in § 740(a) (1) (D) and § 112(b) (5) is not met since after incorporation, Leffel and Ballentyne will have different percentage interests in the business. Or if a new partnership or proprietorship was formed after March 8 and prior to incorporation, then the second partnership from March 8–14 is the "component corporation" rather than the first partnership of three men and the earnings experience of the latter during the base period of 1936–40 cannot be utilized.[3]

But on the taxpayer's theory, there is no dilemma since it argues that Hawaiian law makes a partnership an entity and that, in any event, the agreement of the parties made this partnership a continuing entity. Thus, it is like a corporation and will continue without any outward change as far as outsiders are concerned despite any changes in the membership. Thus, the date that partnership assets were transferred to the corporation is the only date on which the identity of interest test may be applied and it is met on that date. And if there is a single partnership up until the time of incorporation, there is no problem of a second partnership being an "acquiring corporation" of a first partnership.

The answer to the problem must lie then in the answer to the question whether the taxpayer's theory that Hawaiian law or the agreement of the parties makes this partnership an entity can be applied to this problem of federal taxation. Assuming this statement of the Hawaiian law to be correct, and the agreement of the parties to be as stated, we are of the opinion that they are not controlling on this question for two reasons.

■ (A) In construing this legislation, we are required to accept that construction which will make this income tax law uniform in its application throughout the states and territories. As was stated by the Supreme Court in Lyeth v. Hoey, 305 U.S. 188, at page 194, 59 S.Ct. 155, at page 158, 83 L.Ed. 119:

"In dealing with the meaning and application of an act of Congress enacted in the exercise of its plenary power under the Constitution to tax income and to grant exemption from that tax, it is the will of Congress which controls, and the expression of its will, in the absence of language evidencing a different purpose should be interpreted 'so as to give a uniform application to a nationwide scheme of taxation.' Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199. Congress establishes its own criteria and the state law may control only when the federal taxing act by express language or necessary implication makes its operation dependent upon state law. Burnet v. Harmel, supra. See Burk-Waggoner Oil Assn. v. Hopkins, 269 U.S. 110, 111, 114, 46 S. Ct. 48, 70 L.Ed. 183; Weiss v. Wiener, 279 U.S. 333, 337, 49 S.Ct. 337, 73 LEd. 720; Morrissey v. Commissioner, 296 U.S. 344, 356, 56 S.Ct. 289, 80 L.Ed. 263. Compare Crooks v. Harrelson, 282 U.S. 55, 59, 51 S.Ct. 49, 75 L.Ed. 156; Poe v. Seaborn, 282 U.S. 101, 109, 110, 51 S.Ct. 58, 75 L.Ed. 239; Blair v. Commissioner, 300 U.S. 5, 9, 10, 57 S. Ct. 330, 81 L.Ed. 465."

If we should follow the Hawaiian law here, the result would be different from that obtaining in states which have adopted the Uniform Partnership Act in which the partnership is treated, similarly to common law, as not a juristic entity. Williams v. McGowan, 2 Cir., 152 F.2d 570, 162 A.L.R. 1036.

■ As to the agreement of the parties, the taxpayer claims that the three original

---

3. The government relies on T.R. 112, Sec. 35.740–4: "A partnership * * * can be a component corporation for the purposes of Supplement A * * *. However, a partnership cannot be an acquiring corporation and, therefore, section 740(g) cannot operate to make any of its predecessors component corporations of its acquiring corporation."

partners made an agreement like that in Ransohoff's Inc. v. C. I. R., 9 T.C. 376, for the partnership to continue no matter what happened to individual partners. The Tax Court found here, however, that when Schnack withdrew there was no intent in the remaining partners to have the partnership continue and this finding is supported by evidence that prior to Schnack's withdrawal, an understanding had been reached between Leffel, Ballentyne and a third party to operate the freight forwarding business.

(B) The application of an entity theory to the partnership in this situation is barred by the statement of Congressional policy in the Revenue Code. It is of underlying significance that Congress in § 740(a) (1) (D) does not deal with the partnership as an entity. That section makes the test of § 112(b) (5) expressly applicable. The "person" transferring property in a tax-free exchange under § 112(b) (5) may be a partnership.[4] Assuming this to be so, Congress does not spell out in that section whether or not a partnership is to be treated as a juristic entity for that section. The Commissioner has taken the position that where the partnership's status is not spelled out, it will be treated as an aggregate of individuals; and indeed it would not be possible to consistently treat the partnership as an entity under that section in the light of decisions like Earle v. Commissioner, 1 Cir., 38 F.2d 965 and Kessler v. United States, 3 Cir., 124 F.2d 152. In those cases the stock of the corporation was transferred to the partners individually in exchange for a transfer of assets to the corporation from the partnership, and yet in those cases the control test of § 112 (b) (5) was satisfied:

"*Transfer to corporation controlled by transferor.* No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, *and immediately after the exchange such person or persons are in control of the corporation* [our emphasis] * * * ".
If the partnership were an entity and stock is transferred to the partners individually, the control test is not satisfied since the partnership as transferor is not then in control of the transferee corporation.

Consequently, when the personnel of the partnership changed on March 8, a terminal point for that partnership was reached for the purposes of taxation. Whatever form of organization the business between March 8–14 took, it was a new component for the purposes of § 740. Thus, the income method of computing excess profits tax may not be used by the taxpayer, since for the purposes of § 740, no "component corporation" of the taxpayer was in existence before January 1, 1940, during the base period. Cf. E. T. Renfro Drug Co. v. C.I.R., 11 T.C. 994, affirmed 5 Cir., 183 F.2d 846; but see Ransohoff's Inc. v. C.I.R., 9 T.C. 376, appeal to Cir. 9 dismissed by agreement of parties.

Having exhausted its attack on the judgment below on the basis of statutory construction, the taxpayer alleges the miscellaneous errors commonly attributed to administrative tribunals upon review in the courts. The first is that the Tax Court made no findings. The court found the facts as stipulated by the parties. The only facts in the record before us are those contained in this stipulation. If there were other facts in dispute from which findings should have been made, we are not able to determine their existence; and the mere allegation of the taxpayer unsupported by record references is not enough.

It is also said that there are statements in the court's opinion at variance with the stipulated facts. Assuming this to be so, the alleged misstatements do not relate to the ground of decision which we have found to fully support the judgment.

The taxpayer complains that the decision of the Tax Court was based on a ground never in issue since both parties had assumed that the identity of interest test of § 112(b)(5) had been met. An agreement sub silentio between the parties that § 112 (b)(5) had been met would not be binding on the Tax Court. The proof would have to satisfy this test or the court would have

---

4. Regs. 111, Sec. 29.112(b) (5)–1.

to be informed that the Commissioner was not contesting this point, since otherwise, the Tax Court, being referred to § 740 by the petition of the taxpayer, would surely think that the point was in the case. Furthermore, that this assumption concerning § 112(b)(5) was made by the parties is not demonstrated by reference to the record, nor is it implicit in the stipulation of facts. It is true that the Commissioner found that the transfer from the two-man partnership to the corporation on March 14 met the identity of interest test. But when the issue was whether the earnings experience of the three-man partnership during the 1936–40 base period could be used, the Commissioner argued in his brief to the Tax Court that the identity of interest test had not been met.

■ Lastly, it is claimed that the Tax Court exceeded its jurisdiction because the opinion was rendered by a division of the court different from that which heard the controversy. We are not informed of the circumstances prompting this administrative change; but since the decision was made on the stipulations of the parties and on their exhibits, we feel that no prejudice resulted to the taxpayer. Amoroso v. C. I. R., 1 Cir., 193 F.2d 583, and cases cited therein.

The decision is affirmed.