DANIELS BUICK, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56832. Filed July 31, 1956.

*Clark E. Loofbourrow, Esq.*, for the petitioner.
*Bernard J. Doyle, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* Petitioner contends that it acquired "substantially all the properties (other than cash) of another corporation" and is therefore a "purchasing corporation" within the intent of section 474 of the Internal Revenue Code of 1939,[1] and is entitled to utilize the earnings experience of the "selling corporation," here Kelley

[1] SEC. 474. EXCESS PROFITS CREDIT BASED ON INCOME—CERTAIN TAXABLE ACQUISITIONS.
    (a) DEFINITIONS.—For the purpose of this part—
        (1) PURCHASING CORPORATION.—The term "purchasing corporation" means a corporation which, before December 1, 1950, acquired—
            (A) In a transaction other than a transaction described in section 461 (a), substantially all of the properties (other than cash) of another corporation, of a partnership, or of a business owned by a sole proprietorship ; or

       *      *      *      *      *      *      *

        (2) SELLING CORPORATION.—The term "selling corporation" means a corporation, a partnership, or a business owned by a sole proprietorship, as the case may be, properties of which were acquired by a purchasing corporation in a transaction described in paragraph (1).
        (3) PART IV TRANSACTION.—The term "part IV transaction" means a transaction described in paragraph (1).

       *      *      *      *      *      *      *

    (c) LIMITATIONS.—This part shall apply only if each of the following conditions is satisfied :
       *      *      *      *      *      *      *
        (2) During so much of the base period of the purchasing corporation and of the period thereafter as preceded the part IV transaction, the properties acquired in the part IV transaction were substantially all of the properties (other than cash) which were used, or which in the ordinary course of business replaced properties used, by the selling corporation (or by a component corporation, as defined in section 461 (b), of such selling corporation) in the production of the excess profits net income (or deficit therein) which under subsection (b) increases or decreases the excess profits net income of the purchasing corporation. For the purpose of this paragraph, if a business in the hands of both the selling corporation and the purchasing corporation was operated under a substantially identical franchise or license, granted by the same person, such franchise or license shall be deemed acquired by the purchasing corporation from the selling corporation.
        (3) The business or businesses acquired in the part IV transaction (including the properties so acquired or properties in replacement thereof) were operated by the purchasing corporation from the date of such transaction to the end of the taxable year * * *
    (d) SPECIAL RULES.—
        (1) For the purpose of subsection (a) (1), the properties of a selling corporation shall be considered to have been acquired by a purchasing corporation only if acquired from—
            (A) such selling corporation, or
            (B) persons who received the properties upon the liquidation of such selling corporation and who forthwith transferred such properties to the purchasing corporation in a transaction other than a transaction described in section 461 (a).

Buick, in computing its excess profits credit based on income, for purposes of the Excess Profits Tax Act of 1950.

Section 474 was added to subchapter D of chapter 1 of the 1939 Code by section 521 of the Revenue Act of 1951. Its application was limited to transactions which had occurred before December 1, 1950. The transaction here involved occurred prior to that date and prior to enactment of the Excess Profits Tax Act of 1950, which was approved January 3, 1951. The intent of this provision is explained in Senate Report No. 781, Eighty-second Congress, First Session (1951–2 C. B. 458, pp. 511–512), as follows:

Part 2 of the Excess Profits Tax Act of 1950 provides rules under which an acquiring corporation may utilize the earnings experience of a predecessor corporation in computing its own average earnings base. However, under the Excess Profits Tax Act of 1950, the acquiring corporation may use this earnings experience only where the assets of the predecessor corporation were acquired in certain tax-free exchanges. In general, these tax-free exchanges occur where the assets of a predecessor corporation are acquired by the acquiring corporation in exchange for its stock. Under the present law the earnings experience of a predecessor corporation may not be used by an acquiring corporation where the assets were acquired by purchase for cash or in some other type of taxable exchange. * * *

Your committee believes that, in the case of taxable exchanges, subject to certain limitations, where purchasing corporations have obtained substantially all of the assets of a predecessor corporation and such predecessor is liquidated, the earnings experience base of the predecessor corporation should be available to the purchasing corporation. * * * However, it is to be permitted the use of this base only to the extent that new funds were used for the purchase of these assets. * * *

Petitioner contends that it is a "purchasing corporation" as defined in section 474 since it acquired 87.25 per cent of the available assets of Kelley Buick. Its computation is as follows: Total assets of Kelley Buick were $308,371.51 on June 30, 1950, of which $211,486.11 consisted of "cash assets" and $96,885.40 of "property assets"; of the "property assets," $51,462.98 represented lots 1, 2, 3, and 4 which petitioner leased; this left assets of $45,422.42 available for purchase; petitioner purchased all of these except the used car inventory carried on the books at $5,786.83, or 12.75 per cent of those available, thus acquiring 87.25 per cent of the available assets with a book value of $39,635.59. This, says the petitioner, was "substantially all" of the assets (other than cash) of Kelley Buick. Petitioner points out that the major property asset used by Kelley Buick, the showroom and service building which cost the Kelleys $65,000 was never owned by the corporation but was leased and that petitioner also leased this asset for the same use, thus "acquiring" it within the meaning of the statute.

Whether one corporation has acquired "substantially all" of the properties (other than cash) of another is a question of fact to be

resolved as an ultimate conclusion based upon the peculiar facts and circumstances attending the transfer and not upon any particular percentage. *Milton Smith*, 34 B. T. A. 702 (1936); *Daily Telegram Co.*, 34 B. T. A. 101, 105 (1936).

We cannot agree with petitioner's contentions. In the first place the petitioner did not "acquire" lots 1, 2, 3, and 4 within the meaning of section 474. Kelley Buick owned these lots from June 30, 1949, until its dissolution in 1950 when it transferred them to Elsie J. Kelley. Lots 3 and 4 had been improved in 1949 with a building for use as a body repair shop and a part of the lots was black-topped for auto storage space. The petitioner did not purchase these lots in 1950 when it took over the other assets, but leased them for a period of 5 years with an option to renew for a like period. The petitioner's lease is not equivalent to its vendor's fee interest in the same property. This result is not inconsistent with *R. & J. Furniture Co.*, 20 T. C. 857 (1953), reversed on another ground (C. A. 6, 1955) 221 F. 2d 795, where we held that the taxpayer acquired certain real estate when it leased it for a period of 55 years, or for a period which was longer than the useful physical and economic life thereof. Such is not the situation here. Petitioner's lease would last no more than 10 years, and possibly only 5. The body repair shop was less than 1 year old when petitioner's lease began and had a useful physical and economic life considerably longer than the term of the lease. But petitioner contends that the nonacquisition of these lots should not change the situation since lots 1 and 2 were never used in Kelley Buick's business and lots 3 and 4 were only used the last 3 to 6 months of the base period of 1946 through 1949. Section 474 makes no provision for such a distinction, nor is it indicated in the legislative history of that section.

Furthermore, petitioner attributes too large a scope to the parenthetical phrase "other than cash." Petitioner argues that cash as used in section 474 means "cash assets" which includes all current assets. Hence, accounts receivable, prepaid insurance, sales tax stamps, prepaid rent, and loans to officers are all "cash" items. We see no basis for this interpretation. Cash as used in common speech has been defined to mean "ready money or money in hand, either in current coin or other legal tender, or in bank bills or checks paid and received as money, and does not include promises to pay money in the future." *In re Palliser*, 136 U. S. 257, 263 (1890). Nor does the legislative history of section 474 offer support for the petitioner's position. Senate Report No. 781, *supra*, does not elaborate as to the meaning of the parenthetical phrase, but merely says, "For the purpose of the above subsections the properties acquired need not include cash."

The amount due from the Kelleys to Kelley Buick at least should not be regarded as a cash asset, but as an asset other than cash. This item was not acquired by the petitioner. This item, the body shop, and lots 1, 2, 3, and 4 were properties, other than cash, which were not acquired by the petitioner. Under this computation Kelley Buick had non-cash assets with a book value of over $136,000 at June 30, 1956, of which petitioner acquired a part which had a book value of $39,635.59. This is less than 30 per cent of the non-cash assets. It follows that petitioner did not acquire "substantially all" of the properties (other than cash) of Kelley Buick within the intent of section 474.

*Decision will be entered for the respondent.*