FREDERICK A. DUDDERAR AND BARBARA C. DUDDERAR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4732–63, 2491–64. Filed July 23, 1965.

*D. Glenn Ofsthun*, for the petitioners.
*Howard K. Schwartz*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' income tax for the calendar years 1959, 1960, 1961, and 1962 in the respective amounts of $1,022.22, $1,349.58, $1,722.98, and $777.84.

The issue for decision is whether deductions claimed by petitioners for interest paid on amounts borrowed to pay premiums on a life insurance contract insuring the life of Frederick A. Dudderar are specifically disallowed by the provisions of section 264 of the Internal Revenue Code of 1954.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Frederick A. Dudderar and Barbara Dudderar (hereinafter referred to as Frederick and Barbara or jointly as petitioners), husband and wife residing in Portage, Ind., filed joint Federal income tax returns for the taxable years 1959, 1960, 1961, and 1962 with the district director of internal revenue at Indianapolis, Ind.

In 1955 Frederick's family consisted of his wife, Barbara, and three children who were then 10, 4, and 1 year old. At the time Frederick was 36 years old and his income was approximately $25,000 per year. Petitioners concluded that in order to provide additional funds for Barbara and the children in the event of Frederick's death, further life insurance should be obtained on Frederick's life and arranged to procure such a policy.

On March 4, 1955, the Crown Life Insurance Co., Toronto, Canada, issued to Barbara C. Dudderar a life insurance policy entitled a "special ten payment life" which insured the life of Frederick A. Dudderar in the amount of $100,000. The policy required the payment of premiums over a 10-year period with the first 5 years' premiums being $7,706 each, and the last 5 years' premiums being $3,853 each.

On March 21, 1955, petitioners executed a note in the amount of $22,451.43 payable to the Peoples First National Bank & Trust Co., Pittsburgh, Pa., hereinafter referred to as the bank. Pursuant to petitioners' instructions the proceeds of this note were forwarded by the bank to the Crown Life Insurance Co., hereinafter referred to as the insurance company. The amount so forwarded constituted the payment of the first annual premium on the policy in the amount of $7,706 and the deposit of the premiums that would be due on the policy in 1956 and 1957 after discounting the premiums for 1956 and 1957 for prepayment. Each year thereafter for the next 7 years petitioners prepaid on a discount basis an additional year's premium and executed a new promissory note in an amount equal to the unpaid principal balance of the prior note plus the additional year's premium. Thus, on March 5, 1956, petitioners executed a note payable to the bank in the amount of $29,715.11, the proceeds of which were used in part to repay the principal amount of the note dated March 21, 1955, previously described herein, and in part were forwarded by the bank

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.

to the insurance company as payment on a discounted basis of the premium due in 1958.

Similarly, petitioners executed notes in 1957 through 1962, inclusive, in amounts which equaled the amounts of the outstanding loan from the previous year plus the premium payable to the insurance company on a discount basis.

Petitioners signed each of the notes payable to the bank, and were personally liable thereon. In addition to the policy issued by the insurance company, petitioners pledged as security for payment of each of the notes four other policies issued by the Equitable Life Insurance Co. of Iowa.

By reason of the premium payments made during the first 4 years of the policy, approximately 73 percent of the entire premiums due on the policy was paid during those 4 years.

The following table indicates pertinent data in regard to the life insurance policy:

SUMMARY OF INFORMATION RELATING TO $100,000 LIFE INSURANCE POLICY ISSUED BY THE CROWN LIFE INSURANCE CO. ON THE LIFE OF FREDERICK A. DUDDERAR

| Year | Amount paid on premiums (all but first year discounted) | Premiums covered | Loan outstanding | Cash value (including unearned premiums) [1] | Interest paid | Death benefit to be received upon death of insured [2] | Death benefit received from insurer less repayment of bank loan |
|---|---|---|---|---|---|---|---|
| 1955 | $22,451.43 | 1955-57 | $22,451.43 | $18,445.43 | $423.43 | $114,745.43 | $92,294.00 |
| 1956 | 7,263.68 | 1958 | 29,715.11 | 24,900.00 | 1,065.89 | 114,563.68 | 84,848.57 |
| 1957 | 7,193.55 | 1959 | 36,908.66 | 31,657.23 | 1,471.62 | 114,457.23 | 77,548.57 |
| 1958 [3] | 3,596.78 | 1960 | 40,505.44 | 35,090.33 | 1,870.54 | 110,790.33 | 70,248.89 |
| 1959 | 3,596.78 | 1961 | 44,102.22 | 38,793.56 | 2,090.43 | 107,193.56 | 63,091.34 |
| 1960 | 3,562.48 | 1962 | 47,664.70 | 42,859.26 | 2,546.90 | 107,159.26 | 59,494.56 |
| 1961 [3] | 3,562.48 | 1963 | 51,227.18 | 47,024.96 | 3,166.39 | 107,124.96 | 55,896.78 |
| 1962 | 3,562.48 | 1964 | 54,789.66 | 51,324.96 | 1,289.88 | 107,124.96 | 52,335.30 |

[1] Unearned premiums including the original discounted amount.
[2] $100,000 face amount plus unearned premiums at original discounted amount.
[3] The stipulated table appears to contain errors with regard to the death benefit receivable from the insurer less repayment of the bank loan for the years 1958 and 1961. The correct death benefit receivable for those years appears to be $70,284.89 and $55,897.78, respectively.
In addition to the above cash surrender value apparently dividends accumulated at a rate of approximately $500 per year.

In the taxable years here in issue petitioners paid in cash as interest on the indebtedness to the bank the following amounts:

| Taxable year | Amount paid as interest |
|---|---|
| 1959 | $2,090.43 |
| 1960 | 2,546.90 |
| 1961 | 3,166.39 |
| 1962 | 1,289.88 |

The insurance policy provided a death benefit after payment of all outstanding loans which ranged from $92,294 in the first year to $45,210.34 in the tenth year. By reason of this death benefit Frederick's family would have available to it in the event of his death the amounts stated above as a result of petitioner's having entered into this life insurance contract. Frederick felt that the additional amount

of life insurance coverage provided by the policy in question was important to the welfare of his family. He expected to offset the decline in the death benefit realizable from the contract over the 10-year period from $92,294 in the first year to $45,210.34 in the tenth year by increases in other assets constituting part of his estate.

In his statutory notice of deficiency for the years 1959 and 1960 respondent determined that interest deductions in the amount of $2,090.43 and $2,546.90, respectively, claimed by petitioners on their returns, failed to qualify as interest deductions under section 163(a) or any other section of the Code. Respondent further determined that such amounts are specifically disallowed under the provisions of section 264.

In his statutory notice of deficiency for the years 1961 and 1962 respondent determined that the deduction for interest claimed by petitioners on their returns to the extent of $3,166.39 and $1,289.88, respectively, was not allowable under section 264.

Respondent's counsel at the trial of this case specifically stated that respondent was "not going to rely on section 163—sham transactions, for the purpose of this case" but that the "interest claimed by the petitioner would be interest within the meaning of the section and would be deductible if it were not specifically prohibited by section 264."

### OPINION

The only issue in this case is whether under the provisions of section 264(a)(2),[2] respondent properly disallowed deductions of amounts paid by petitioners as interest during each of the years 1959 through 1962. Section 264(a)(2) provides that no deduction shall be allowed for any amount paid as interest on indebtedness incurred or continued to purchase or carry a single premium life insurance contract. Section 264(b)(1) provides that a contract shall be treated as a single premium contract if "substantially all the premiums on the contract are paid within a period of 4 years from the date on which the contract is purchased." The facts here are not in dispute. The parties have stipulated that during the 4-year period from the date on which the contract was purchased petitioners paid 73 percent of the premiums. The controversy between the parties is whether 73 percent is "substantially all" within the meaning of section 264(b)(1).

---

[2] SEC. 264. CERTAIN AMOUNTS PAID IN CONNECTION WITH INSURANCE CONTRACTS.

(a) GENERAL RULE.—No deduction shall be allowed for—

\* \* \* \* \* \* \*

(2) Any amount paid or accrued on indebtedness incurred or continued to purchase or carry a single premium life insurance, endowment, or annuity contract.

Paragraph (2) shall apply in respect of annuity contracts only as to contracts purchased after March 1, 1954.

(b) CONTRACTS TREATED AS SINGLE PREMIUM CONTRACTS.—For purposes of subsection (a)(2), a contract shall be treated as a single premium contract—

(1) if substantially all the premiums on the contract are paid within a period of 4 years from the date on which the contract is purchased, or

Respondent takes the position that since the purpose of section 264 was to disallow a deduction for interest paid for production of financial gain which is unlikely to constitute income, the deduction here in issue should be disallowed even though on a mathematical basis 73 percent might not be considered in other circumstances to constitute "substantially all." Respondent relies on *Knetsch* v. *United States*, 364 U.S. 361 (1960); *Daniels Buick, Inc.*, 26 T.C. 894 (1956), affirmed per curiam 251 F. 2d 528 (C.A. 6, 1958); *Milton Smith*, 34 B.T.A. 702 (1936).

Petitioners argue that the *Knetsch* case is totally inapplicable here since that case dealt with a "sham" transaction and respondent in the instant case has specifically stated that he was not contending that the transaction here was a sham. Petitioners further contend that the other two cases relied on by respondent as well as numerous other cases dealing with the meaning of "substantially all" as it has been used in various sections of the revenue acts and Codes support their contention that 73 percent is not "substantially all." Petitioners state that by adding section 264(a)(3)[3] to the Internal Revenue Code of 1954 to apply with respect to contracts purchased after August 6, 1963, Congress indicated that it had not intended that interest payments prior to that date be disallowed merely because they were paid on an indebtedness incurred or continued to carry a life insurance contract. Petitioners further state that the legislative history of the enactment of the provisions which are now contained in section 264, indicates that Congress did not intend by the provisions as they existed prior to August 6, 1963, to disallow interest deductions except in those cases where such deductions were paid to carry a single premium life insurance contract as defined in that section.[4] Neither party has called

---

[3] Sec. 264(a)(3). Except as provided in subsection (c), any amount paid or accrued on indebtedness incurred or continued to purchase or carry a life insurance, endowment, or annuity contract (other than a single premium contract or a contract treated as a single premium contract) pursuant to a plan of purchase which contemplates the systematic direct or indirect borrowing of part or all of the increases in the cash value of such contract (either from the insurer or otherwise).

\* \* \* Paragraph (3) shall apply only in respect of contracts purchased after August 6, 1963.

[4] The legislative history of the predecessor section to sec. 264(a)(2) [sec. 24(a)(6), I.R.C. 1939] offers no assistance on the question of what constitutes "substantially all." Sec. 130 of S. Rept. No. 1631, to accompany H.R. 7378 (Pub. L. 753), 77th Cong., 2d Sess., p. 97, states:

"This section is of somewhat more limited application than section 121 of the House bill. It adds to section 24(a) (relating to items not deductible) paragraph (6) which in effect denies a deduction, under section 23(b), as well as under any other provision of this chapter, for any amount, whether in the form of interest or in any other form, which has been paid or accrued on an indebtedness incurred or continued to purchase a single premium life insurance or endowment contract. (Compare the provision of section 23(b) which prohibits the deduction of interest paid or accrued on indebtedness incurred or continued to purchase or carry tax-exempt securities.) By reason of a definition added by your committee a contract shall be considered a single premium life insurance or endowment contract, for the purposes of this paragraph, if substantially all the premiums on such contracts are paid within a period of 4 years from the date on which the contract is purchased."

our attention to any case nor have we found one specifically dealing with section 264(b)(1) or its predecessor in the Internal Revenue Code of 1939. We agree with petitioners that under general statutory construction the deduction for which disallowance is specifically provided in section 264 is interest paid or incurred to carry a single premium life insurance contract. By definition a contract is to be treated as a single premium contract if "substantially all" the premiums thereon are paid within a period of 4 years from the date on which the life insurance contract is purchased. We are therefore directly confronted with determining under the facts here present whether 73 percent is "substantially all."

If the statement were "all" not modified by the word "substantially," it would refer to either 100 percent or such a small variation from 100 percent that such variation might be said to be *de minimis*. The word "substantially," however, is an elastic word not so easily susceptible of definition. That term as used in a provision of the Internal Revenue Acts of 1918 and 1921 dealing with corporate affiliations has been stated to mean all except a "negligible minority" interest. *Ice Service Co.* v. *Commissioner*, 30 F. 2d 230 (C.A. 2, 1929), affirming 9 B.T.A. 385 (1927). In construing these same statutes the Supreme Court in *Handy & Harman* v. *Burnet*, 284 U.S. 136 (1931), concluded that 75 percent of the shares of a related corporation "did not constitute substantially all of its stock," citing in a footnote the following cases:

*Ice Service* v. *Commissioner*, 30 F. (2d) 230, 231; *Commissioner* v. *Adolph Hirsch & Co.*, 30 F. (2d) 645, 646; *American Auto Trimming Co.* v. *Lucas*, 37 F. (2d) 801, 803; *United States* v. *Cleveland, P.&E. R. Co.*, 42 F. (2d) 413, 419; *Commissioner* v. *Gong Bell Mfg. Co.*, 48 F. (2d) 205, 206; *Onondaga Co.* v. *Commissioner*, 50 F. (2d) 397, 399.

The cases cited in this footnote involve percentage ownership of stock in the related corporations by the individuals specified by statute in amounts ranging from approximately 68 to approximately 85 percent. Similarly in construing the provisions with respect to affiliation contained in the Revenue Acts of 1918 and 1921 we specifically held that the combined holdings of two stockholders which were not in excess of 85.3 percent of the outstanding stock of the company which it was proposed be considered as an affiliate was insufficient to meet the statutory requirement of "substantially all," *Gulf Coast Irrigation Co.*, 24 B.T.A. 958, 967 (1931), and cases there cited. We do not consider that the words "substantially all" as used in section 264(b)(1) should be defined to be a precise percentage to be used in every case without reference to the surrounding facts. Nevertheless section 264(b)(1) does deal only with a quantitative amount in that it deals with money payments and therefore the words "substantially all" as used therein

must be given their ordinary meaning of all but a small negligible amount.[5]

Considering the purpose for which section 264(b)(1) was enacted, its legislative history as well as the factual situation present in the instant case, we conclude that the 73-percent payment in the instant case did not constitute "substantially all" the premiums on the insurance contract here involved. Since some uncontested adjustments were made in the notice of deficiency,

*Decision will be entered under Rule 50.*

---

[5] There have been State court cases interpreting the words "substantially all" in relation to the provisions of unemployment compensation acts referring to a range ordinarily from 90 to 100 percent. See, for example, *Auclair Transp.* v. *Riley*, 96 N.H. 1, 69 A. 2d 861 (1949).